UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAN CORNEJO SANCHEZ, | Case No. ED CV 16-1621-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On July 26, 2016, plaintiff Efran Cornejo Sanchez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"),[1] seeking a review of a denial of period of disability and disability insurance benefits ("DIB"). Both parties have consented to proceed for

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, the current Acting Commissioner of Social Security Administration, has been substituted as the defendant.

1

all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered and rejected the opinion of Dr. George Watkin, an examining physician; (2) whether the ALJ's step four determination is supported by substantial evidence; and (3) whether the ALJ failed to evaluate plaintiff's back impairment after July 2013. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-18.

Having carefully studied the parties' written submissions, the decision of the ALJ, and the Administrative Record ("AR"), the court concludes that, as detailed herein, the ALJ erred in failing to explicitly reject Dr. Watkin's opinion, and also erred at step four, although the step four error was harmless. In light of the error with Dr. Watkin's opinion, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fifty-four years old on his alleged disability onset date, completed the third or fourth grade. AR at 34-35, 160. He has past relevant work as a landscaper. *Id.* at 55.

On May 10, 2012, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging he has been disabled since May 14, 2010 due to torn ligaments or tendons in his left arm, a torn left shoulder (rotator cuff), a torn right knee, and a torn right rotator cuff. *Id.* at 160, 164. The Commissioner denied plaintiff's application, after which he filed a request for reconsideration, which was denied. *Id.* at 88-92, 96, 98-102. Plaintiff then filed a request for a hearing. *Id.* at 104.

On May 19, 2014, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 34-63. At the hearing, the ALJ also heard testimony from Troy Scott, a vocational expert ("VE"). *Id.* at 54-60. On June 16, 2014, the ALJ denied plaintiff's claim for benefits. *Id.* at 15-27.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 14, 2010, the alleged onset date. *Id.* at 20.

At step two, the ALJ found plaintiff suffered from the following severe impairments: lumbar spine strain, left shoulder residual impingement syndrome status post arthroscopic surgery, left elbow/forearm tendosis status post bicep/tendon repair surgery, and right knee patellofemoral pain syndrome status post arthroscopic surgery. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal the severity of one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 22.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined that plaintiff had the RFC to perform medium work, with the limitations that he can: perform postural maneuvers on a frequent basis; only occasionally climb ladders, ropes, or scaffolds; frequently reach overhead with his dominant right upper extremity; and frequently reach, handle, and finger with his left upper extremity. *Id.* at 22-23. In addition, he has to avoid concentrated exposure to hazards. *Id.* at 22.

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

The ALJ found, at step four, that plaintiff was capable of performing past relevant work as a landscaper. *Id.* at 26. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 27.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 8-12. After receiving additional evidence, the Appeals Council again denied plaintiff's request for review. *Id.* at 1-6.

The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

## A. The ALJ Erred in Failing to Properly Consider Dr. Watkin's Opinion

Plaintiff argues the ALJ failed to properly consider Dr. Watkin's opinion. P. Mem. at 4-10. Specifically, plaintiff contends the ALJ's RFC determination differs from Dr. Watkin's opinion, despite the ALJ stating he gave great weight to the opinion. Plaintiff argues Dr. Watkin's findings lead to a determination that plaintiff would not be able to return to his pre-injury occupation, making the ALJ's error prejudicial. The court agrees the ALJ did not properly consider Dr. Watkin's opinion.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[3] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and

---

[3] The Social Security Administration issued new regulations effective March 27, 2017. Unless otherwise stated, all regulations cited in this decision are to those effective for cases filed prior to March 27, 2017.

5

observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). But "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician," just as the ALJ "must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 416.927(e)(2)(ii). ALJs "may not ignore these opinions and

must explain the weight given to these opinions in their decisions." Social Security Ruling ("SSR") 96-6p.[4]

### 1. **Dr. Vicente Bernabe, D.O.**

Dr. Bernabe was a consultative orthopedic doctor who examined plaintiff on October 8, 2012. AR at 800-05. Dr. Bernabe reviewed plaintiff's medical records, which consisted of a progress note and operative report. *Id.* at 800. Dr. Bernabe observed plaintiff had a normal gait, no evidence of weakness in the ankle flexors or extensors, normal range of motion of the cervical spine. *Id.* at 802. Dr. Bernabe also observed there was mild tenderness in plaintiff's back. *Id.* As for the range of motion of plaintiff's upper extremities, Dr. Bernabe observed a positive impingement sign on the left shoulder, with some crepitus at the acromioclavicular joint. *Id.* at 803. Dr. Bernabe did note, however, that the range of motion of plaintiff's upper extremities – shoulders, elbows, wrists, hands, and fingers – were all within normal limits. *Id.*

As for the range of motion of plaintiff's lower extremities, aside from mild patellofemoral crepitus on the right knee, range of motion for plaintiff's hips, knees, ankles, and feet were all within normal limits. *Id.*

Dr. Bernabe opined based on his examination that plaintiff should be able to lift and carry fifty pounds occasionally and twenty-five pounds frequently. *Id.* at 804. He also opined that plaintiff could stand and walk up to six hours in an eight-hour day and could sit six-hours out of an eight-hour day. *Id.* He determined

---

[4] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

SSR 96-6p was rescinded and replaced by SSR 17-2, effective March 27, 2017. As this case was filed prior to March 2017, the court cites to the old SSR.

plaintiff could perform pushing and pulling on a frequent basis but overhead motions should be limited to a frequent basis for the left upper extremity. *Id.* at 804-05.

### 2. **Dr. M. Khawaja**

Dr. M. Khawaja, a state agency consulting examiner, reviewed the medical evidence then in the record, giving Dr. Bernabe's October 8, 2012 opinion great weight. *Id.* at 65-66, 69. In findings dated October 18, 2012, Dr. Khawaja determined plaintiff could occasionally lift and/or carry (including upward pulling) fifty pounds, frequently lift and/or carry (including upward pulling) twenty-five pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and had no limitations on push and/or pull abilities. *Id.* at 70. Dr. Khawaja also found plaintiff could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl and could occasionally climb ladders/ropes/scaffolds. *Id.* Dr. Khawaja opined plaintiff was limited in reaching to the left overhead but had unlimited handling, fingering, and feeling capabilities. *Id.* at 71.

### 3. **Dr. Philip Sobol**

Dr. Philip Sobol, plaintiff's primary treating physician, treated plaintiff approximately six times from February 9, 2010 through December 19, 2012. *Id.* at 679-855. In his report dated January 10, 2013 regarding his final December 19, 2012 evaluation, Dr. Sobol noted plaintiff's range of motion for his right shoulder as follows – flexion: 160/180 degrees; extension: 36/50 degrees; abduction: 148/180 degrees; abduction: 36/50 degrees; internal rotation: 65/90 degrees; external rotation: 80/90 degrees. *Id.* at 846. Plaintiff's range of motion for his left shoulder is as follows: flexion: 152/160 degrees; extension: 40/50 degrees; abduction: 141/180 degrees; abduction: 35/50 degrees; internal rotation: 63/90 degrees; external rotation: 80/90 degrees. *Id.* at 846. Dr. Sobol declared him permanent and stationary. *Id.* at 852.

In a supplemental report dated November 7, 2013, Dr. Sobol reviewed Dr. Watkin's supplemental report dated September 27, 2013 and Dr. Glousman's operative report dated January 22, 2013. *Id.* at 918-20. At that time, Dr. Sobol had not yet received Dr. Watkin's Agreed Medical Re-Evaluation Report. *Id.* at 919. Therefore, Dr. Sobol could only address the apportionment of 20% to degenerative changes and 80% apportioned to plaintiff's 2009 injury. *Id.* Dr. Sobol disagreed with Dr. Watkin's characterization of how the tears to plaintiff's biceps tendon resulted. *Id.*

### 4. Dr. George Watkin

Dr. Watkin evaluated plaintiff in the capacity of an Agreed Medical Examiner on January 22, 2013 for plaintiff's workers' compensation claim. *Id.* at 862-76. He previously evaluated plaintiff on October 26, 2011, when plaintiff was post-operative in his right shoulder and a surgical candidate for his left shoulder. *Id.* Dr. Watkin observed plaintiff had full range of motion in his right shoulder. *Id.* at 872. He also noted plaintiff had 23% upper extremity impairment with regard to his left shoulder and 18% upper extremity impairment for his left elbow/biceps tendon. *Id.* at 872-73. Dr. Watkin also observed plaintiff had 7% upper extremity impairment with regard to his left thumb and had full range of motion in his right knee. *Id.* at 873.

Dr. Watkin opined that plaintiff should avoid repetitive work at or above shoulder level and avoid lifting, pushing, and pulling of heavy objects with regard to both shoulders. *Id.* With regard to his left elbow/biceps, given the absence of a biceps tendon, Dr. Watkin opined that plaintiff should avoid heavy lifting, pushing and pulling activities, and repetitive motion using the elbow. *Id.* at 874. He also recommended that plaintiff avoid repetitive gripping and grasping activities for his left hand/thumb. *Id.* Lastly, he recommended plaintiff avoid repetitive kneeling, crawling, squatting, and climbing activities. *Id.*

### 5. Dr. R. Strong

Dr. R. Strong, a state agency medical consultant, reviewed the medical evidence then in the record. *Id.* at 75-86. In findings dated May 8, 2013, Dr. Strong determined plaintiff could occasionally lift and/or carry (including upward pulling) fifty pounds, frequently lift and/or carry (including upward pulling) twenty-five pounds, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and had no limitations on push and/or pull abilities. *Id.* at 83. Dr. Strong also found plaintiff could frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, frequently balance, frequently stoop (bend at the waist), frequently kneel, frequently crouch (bend at knees), and frequently crawl. *Id.* at 83-84. Dr. Strong also determined plaintiff was limited in reaching to his left overhead, but otherwise had no other manipulative limitations. *Id.* at 84.

### 6. The ALJ's Findings

The ALJ gave great weight to the opinions of the state agency medical consultants, Drs. Khawaja and Strong, as well as Dr. Bernabe's opinion because the opinions were consistent with each other and with the medical records showing significant physical improvement with surgery and physical therapy. *Id.* at 26. The ALJ also stated he gave great weight to the "orthopedic opinion from 2013," which was Dr. Watkin's opinion. *Id.* The ALJ stated Dr. Watkin's opinion was consistent with the state agency medical opinions. *Id.*

An "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (citation omitted). But an ALJ is not bound to accept or apply a workers' compensation physician's status designation, such as temporary total disability, because such terms of art are "not equivalent to Social Security disability terminology." *Dawson v. Colvin*, 2014 WL 5420178, at *5

(C.D. Cal. Oct. 23, 2014) (citing *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988); *Macri v. Chater*, 93 F.3d 530, 544 (9th Cir. 1996); *Booth*, 181 F. Supp. 2d at 1104); *see also* 20 C.F.R. § 404.1504. An ALJ is required to "translate" such terms "into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." *Booth*, 181 F. Supp. 2d at 1106 (citation omitted). The ALJ's decision does not need to contain an "explicit translation," but it should indicate the ALJ recognized the differences between the workers' compensation and Social Security terminology and took those differences into account in evaluating the medical evidence. *Id.* at 1105-06.

Here, although Dr. Watkin evaluated plaintiff for his workers' compensation claim, the ALJ's decision does not reference any difference between the workers' compensation terminology and Social Security terminology. *See* AR at 18-27. At the May 19, 2014 hearing, plaintiff's attorney posed a hypothetical to the VE using Dr. Watkin's findings. *Id.* at 57. The ALJ asked plaintiff's attorney to translate Dr. Watkin's terms into Social Security terminology. *Id.* The attorney's translated hypothetical was a person who, on the left side, could perform "occasional gripping, grasping, occasional flexion, extension, pronation, supination" with the ability to do light lifting and "occasional above the shoulder work." *Id.* at 59. On the right, the abilities were "medium for lifting, pushing, pulling," and occasional above the shoulder work. *Id.* Dr. Watkin's recommendation to avoid "repetitive" kneeling, crawling, squatting and climbing was translated to "occasional" kneeling, crawling, squatting, and climbing. *Id.*

But none of these translations were included in the ALJ's June 16, 2014 written decision. Rather, in recounting Dr. Watkin's findings, the ALJ reverted back to Dr. Watkin's original terminology such as that plaintiff was prohibited from "repetitive use" and "repetitive kneeling, crawling, squatting and climbing."

*Id.* at 25-26. Thus, it is not clear whether the ALJ took the differences into account in actually making his decision.

Even assuming the ALJ did take the differences between workers' compensation and Social Security terminology into account, he does not state whether he adopted plaintiff's attorney's translation (e.g., no repetitive = only occasional permitted) or a different standard. At best, construing the ALJ's decision generously and trying to reconcile his RFC determination with his statement that he gave great weight to Dr. Watkin's opinion, one might infer the ALJ found Dr. Watkin's opinion restricting plaintiff from certain repetitive activities to be equivalent in Social Security terms to limiting plaintiff to only frequently performing such activity. But the ALJ nowhere states he made this translation, nor does he offer any support for the accuracy of such a translation.

Plaintiff argues the appropriate translation is the one his attorney made, that a restriction from repetitive activity in the workers' compensation context amounts to a limitation to occasional activity in the Social Security context. But as defendant points out, the case plaintiff relies on, *Macapagal v. Astrue*, 2008 WL 449580 (N.D. Cal. Sept. 29, 2008), does not fully support his position. The court in *Macapagal* found a restriction from repetitive work equivalent to neither a limitation to frequent nor a limitation to occasional work. *Macapagal*, 2008 WL 4449590 at *3. Indeed, the Ninth Circuit has observed – albeit not when considering workers' compensation terms in the Social Security context – that "repetitively" as used in one case "appears to refer to a *qualitative* characteristic – i.e., *how* one uses his hands, or *what type* of motion is required – whereas . . . .'frequently' seem[s] to describe a *quantitative* characteristic – i.e., *how often* one uses his hands in a certain manner." *Gardner v. Astrue*, 257 Fed. Appx. 28, 30 n.5 (9th Cir. 2007).

In short, although the ALJ stated he gave great weight to Dr. Watkin's opinion, without any clear indication of whether and how he translated Dr.

Watkin's terms from the workers' compensation to the Social Security context, Dr. Watkin's opinion may well have carried no weight in the ALJ's RFC determination. Certainly if "repetitive" is qualitatively different than "frequent" as the Ninth Circuit suggests, the prohibition on repetitive work is nowhere accounted for in the RFC determination. Thus, the ALJ implicitly rejected Dr. Watkin's contradicted opinion despite his stated assignment of great weight to it. And he failed to provide any reason, much less specific and legitimate reasons supported by substantial evidence, for such a rejection. The ALJ therefore erred in considering Dr. Watkin's opinion.

**B.     <u>The ALJ Erred at Step Four, But the Error Was Harmless</u>**

Plaintiff contends the ALJ's determination at step four that plaintiff could return to his past relevant work is not supported by substantial evidence. P. Mem. at 11. Specifically, plaintiff contends the VE testified plaintiff's past relevant work was under a nonexistent Dictionary of Occupational Titles ("DOT") code, 406.687-014, which the VE referred to as a "landscape worker." *Id.* at 12-13. Defendant concedes the DOT code does not exist. D. Mem. at 7. Plaintiff argues his past relevant work actually falls under DOT code 408.687-014 for "laborer, landscape," a job at the heavy exertional level. P. Mem. at 13-15. Defendant argues the misidentified number is actually 408.684-014 for "groundskeeper," a medium exertional level job. D. Mem. at 7. In his decision, the ALJ also refers to the nonexistent DOT code and refers to it as a "landscaper" position. Plaintiff further argues a conflict exists between the DOT and the VE's testimony, and the ALJ did not seek an explanation for this conflict, which warrants reversal. The court finds this was harmless error.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies

13

with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). A claimant's former occupation qualifies as past relevant work if it was performed within the last fifteen years, lasted long enough for him or her to learn to do it, and produced enough income to qualify as substantial gainful activity. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).

In determining the physical requirements of a claimant's past work, and whether he has the RFC to perform it, the ALJ considers information from the claimant, vocational experts, and the DOT. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first asking the VE whether his testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). Failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19. Conversely, where the ALJ does inquire but the VE wrongly testifies there is no conflict when in fact the VE's testimony appears to conflict with the DOT, the "ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). If the ALJ fails to obtain an explanation for and resolve an apparent conflict, even where the VE did not identify the conflict, the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010).

Here, the ALJ asked the VE whether his testimony was consistent with the DOT, and the VE stated it was. AR at 56. But the VE's testimony was not in fact consistent with the DOT, because the VE identified a nonexistent DOT job code. This was an apparent error the ALJ failed to detect. Although both sides agree the VE was just one number off, they do not agree as to which number the VE intended. Consequently, the VE's testimony in this regard was flawed and does

not constitute substantial evidence. The ALJ erred in relying on this testimony to find plaintiff could perform his past work as it is generally performed.

The ALJ's error was harmless, however, because he also found plaintiff could perform his past relevant work as actually performed, and the VE's DOT code error does not undermine this finding. The VE testified someone with plaintiff's RFC as determined by the ALJ could perform plaintiff's past work as he actually performed it, which was at a medium exertional level. AR at 55. The ALJ's determination plaintiff could perform his job as actually performed is sufficient to satisfy step four.

Of course, given the need to reconsider Dr. Watkin's opinion, the RFC may change on remand. But given the RFC as previously determined, the ALJ's error at step four was harmless. Nonetheless, on remand, the ALJ must clarify the DOT code and position that correspond with plaintiff's past relevant work.

**C.     The ALJ Was Not Required to Discuss Plaintiff's 2013 Car Accident**

Plaintiff argues the ALJ failed to consider plaintiff's back impairment after a car accident in July 2013. P. Mem. at 16. Defendant argues there is no evidence that the 2013 accident caused any significant or additional loss of function, and in any event the ALJ ultimately included the condition in the evaluation. D. Mem. at 9-10. The court agrees with defendant that the ALJ properly considered plaintiff's back impairment.

An "ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2006) (internal quotations and citation omitted). But the ALJ is required to discuss significant and probative evidence. *See id.*; *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Plaintiff was involved in a car accident in July 2013 and complained of pain in his neck, shoulder, and back. AR at 937-39. At a July 29, 2013 evaluation, plaintiff was diagnosed with neck strain and shoulder strain. *Id.* at 940. There were mild degenerative changes from C4 through C6 but no fracture. *Id.* at 941.

On January 30, 2014, plaintiff was seen again for continued low back pain. *Id.* at 948-49. On February 18, 2014, plaintiff began a physical therapy program. *Id.* at 954-55. By May 2014, plaintiff reported he continued to feel better. *Id.* at 972. He had improved his forward flexion to reach his ankles with less pain after manual treatment. *Id.* at 973.

Thus, contrary to plaintiff's contention that the condition became more severe, it appears plaintiff's condition actually improved after July 2013. The ALJ noted plaintiff had lumbar spine strain but presented a normal range of motion in his lumbar spine and normal sensation at his 2013 orthopedic examination. *Id.* at 22, 25. Additionally, contrary to plaintiff's argument the ALJ ignored his back condition, the ALJ stated he gave plaintiff the benefit of the doubt as to any back pain, and found his lumbar strain was severe. *Id.*

The ALJ was not required to discuss the July 2013 car accident explicitly, but his decision shows he considered any back impairment plaintiff suffered from the July 2013 car accident. Accordingly, the ALJ did not error in his consideration of this evidence.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, and the ALJ's findings must be clarified as discussed above. On remand, the ALJ shall reconsider Dr. Watkin's opinion and take the differences in workers' compensation and Social Security terminology into consideration, and either credit the opinion appropriately or provide specific and legitimate reasons supported by substantial evidence for rejecting it. The ALJ shall then reassess plaintiff's RFC and proceed through step four and, if necessary, step five to determine what work, if any, plaintiff is capable of performing. In addition, at step four, the ALJ shall clarify the corresponding DOT codes.

//
//

**VI.**

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: November 16, 2017

_____
SHERI PYM
United States Magistrate Judge